Good morning, your honor. Ethan Ballot on behalf of Jesse Vasquez. May it please the court. Before I begin, and I would ask that we leave the clock running for this plenary session, I want to introduce who's with me today. Karen Lando is going to argue. She represents, excuse me, Manuel Hernandez. We're joined at the council table by Verna B. Fault. She represents Arturo Cruz. We have Robinson, Harley, Wayne Young, Tom Wilson, and excuse me, Dave Wilson, Tom Wilson on the bench. It is our intention in the public session to only argue the Prop 47 issue for Mr. Vasquez and to submit on all other issues. The caveat I would give is all counsel that I've identified are prepared to answer any questions your honors have, so if for that public session you do have questions, when I'm done with the Prop 47, I'm going to dedicate about two minutes to it. Then we would ask the court to inquire any of those subject matters, and then we'll move on to the wiretap. With that introduction, I wanted to address the Prop 47 issue for about two minutes from Mr. Vasquez. In short, subsequent to his sentence, but while the case is on direct appeal, there was a sea change in California law whereby the legislature, pursuant to the vote of the electorate, decided that all civil possession cases would be misdemeanors for all purposes. This case is not yet final, and the superior court reduced misdemeanors under Mr. Vasquez's sentence to a misdemeanor. Under this court's precedent, LaValle, which joined the other circuits, he's entitled to reopen those if the judgment has gone final to be resentenced. Mr. Vasquez need not do that. Under McChristian, he's allowed to ask this court to recognize that he doesn't have two qualifying convictions and to vacate. How do you get around McNeil? Excuse me? How do you get around McNeil? Can you give me a little more on that, Your Honor? The Supreme Court's decision in McNeil where the court said you were going to take account of the law as it was in effect at the time that the crime was committed. Was that a guidelines case, Your Honor, as opposed to 851, which permits a collateral challenge? I think it may have been a guidelines case. And I think that's the difference with Nordby as well. 851 specifically allows the collateral challenge, which is recognized post-Custis in LaValle and McChristian, and that's what we rely on. At a minimum, because the case isn't final, you definitely have the authority to vacate remand to have Judge Carter ask for it in the first instance, and the government recognized that type of relief in their remand. What would Judge Carter do? He would determine in the first instance whether or not it should be vacated. The same thing I'm asking this question. Are there findings of fact that have to be issued? Why isn't this just a straight-up matter of law? I would agree with you, Your Honor, that it's a straight-up matter of law. It's been reduced to a misdemeanor, and under LaValle, he's timely and can have it reduced. Prop 47 may affect how Mr. Vasquez's sentence will be treated by California, but why does that govern our court? Well, it doesn't necessarily. Right, but it doesn't necessarily. Well, the question is, to get the life sentence under 851, you have to have two felony convictions that have gone final. And in California, his felony conviction obviously didn't go final in that sentence because it was reduced to a misdemeanor. Wait, was it not final? He had not pursued all of his remedies in California state courts? He didn't. That's why there was a sea change after his judgment of conviction. Right, but it was final for all purposes in California at the time that Prop 47 came out. That is correct, Your Honor, but Prop 47 changed it. Basically, California recognized that it is a misdemeanor, so he no longer has two qualifying. And if you look at LaValle, under LaValle, he would be entitled under habeas to come back to Judge Carter and say, you should reopen my federal sentencing. And if on habeas he can come back to Judge Carter under LaValle, and this is Sixth Circuit say this, then on direct appeal, he should certainly be able to say to this court, that misdemeanor is no longer a valid felony conviction. I shouldn't get a life sentence. So the fact that the reclassification really doesn't challenge the legality of the original conviction, nor does it represent that he was actually innocent on the crime, simply because he can come back on a habeas, I must do something different? Is that what you're saying to me? Yes, I'm saying that. And under which case would that go? LaValle. LaValle and McCrish are the two cases. And the notion is, and the difference between Norbury is, we're not denying that Mr. Vasquez is convicted. He's convicted of simple possession. The question is, what is the effect of that conviction? If that is now a misdemeanor, then it's not a qualifying felony conviction for a life sentence under 851. And if he could do under LaValle, if he could come back and ask a judge on habeas to reopen it, which is what LaValle says post-Custis, then he most certainly should be able to, on this court, while on direct appeal, before that sentence got final, ask this court to recognize that he no longer has two qualifying convictions, and thus he should not be subject to a life sentence. He's still subject, I believe, to a 40-year sentence, which is, for a 40-some-odd-year-old man, is a pretty significant sentence for a drug case. Yeah, but that won't control here, will it? That's not controlling here. We're going to decide this as a matter of law, aren't we? Yes, correct. You know what troubles me, and as I listened to it and I read your argument, let's assume that there was a death penalty case, and you might think this hypothetical has nothing to do with your case, but let's assume so, and let's assume the death penalty had been carried out, and then somebody decided, no, that crime is no longer death penalty eligible. Would the heirs have an opportunity to sue somebody for having convicted and sentenced them to death if they'd already been sentenced to death? As formulated, no, Your Honor. I don't think they would. Now, if there had been no such thing, if they had convicted him, sentenced him to death on an action that was not death penalty eligible, then his heirs, after his death, could have come in and done whatever they needed to do to recover whatever damages they could recover because it would be a wrongful death, wouldn't it? I'm not sure of the answer to that question, Your Honor. Oh, you're sure they could if they made a mistake. It wasn't death penalty eligible, but he'd been executed. But who would they sue? I think the prosecutor would have absolute immunity. The jurist would have absolute immunity. So you can't sue either of those individuals. I think if a police officer or a law enforcement agent did something that was improper that caused the mistake to have happened to carry it out, you might have a cause of action against him if he was a state officer under 1984 or if he was a federal officer under Bivens. But I'm not sure any of the actors who were responsible for the court proceedings would be subject to a lawsuit just based on the principles of absolute immunity.  There was a law changed the next week after he was sentenced to death that said, in fact, the qualifying event no longer qualifies. We recognize it was always wrong. It never should have been. This is not a qualifying aggravating factor. It can never be considered. It was a mistake to include on the books. I would hope and expect that this court would then, on direct appeal of that sentence before it is carried out and the person who is sentenced to death saying, hey, I'm going to get killed here. And everyone agrees that that aggravating factor was a mistake and the legislature said it was a mistake and the legislature said it's not a felony aggravator, it's a misdemeanor. I would hope and expect this court would say, don't execute that man. That qualifier has changed. It would apply LaValle. It would apply McChristian and give that man relief. What do I do with Prop 47's language itself which says, nothing in this section is intended to diminish or abrogate the finality of judgments in any case not falling within the purview. That means, how I read that, and I think that's the Perez case, the government cites to us, which is, I think, a good case for us. I think that means does your case, when you seek, if you're not in prison, if you're in prison, currently there's a cause of action you can take. And if you're Mr. Vasquez's case, you've served your sentence, there's a course of action, which is what he took. And the court decided his case, his 11-350 from 1996, fell within the purview, and that case fell within the purview, and it came out. What it means is if there's other cases that aren't one of these reducible offenses, then those cases don't get relief from the California courts. But Mr. Vasquez's case has been determined by the Superior Court to have fallen within the purview of the act, and the state didn't appeal that. They let that misdemeanor go final. There was no objection to it. And so the question now is, is there a legal effect on this case? And we think Lavelle compels that conclusion. What do I do if people be fire? I'm an Idaho man, so I might not be saying that last case right. F-E-Y-R-E-R. What do I do with that case? Well, that case says it's a California case, 2010 case, and it says where certain state convictions are later designated a misdemeanor, they are not a misdemeanor for retroactive purposes. I don't know what to do with that case. I'm not familiar with it, but I'm not sure that language hurts me at all. We're not asking for retroactive purposes. Well, I think we really are. We're saying now we need to go back and rethink what we did before. Well, yes and no. I remember his case hasn't gone final, but if Prop 47 came down one year before his sentencing, there is no dispute that Mr. Vasquez would not have had two qualifying priors at the time of sentencing. When the 851 information prior, they couldn't have named it in the 851. They couldn't have sustained it in the 851. If they had a bench trial on it, it couldn't have been found to be a felony under 851. So the timing of it is very, very important. And because this case isn't final on his sentence, we think it's the same effect as McChristian, whereas in McChristian, a similar fact pattern happened post-indictment, pre-sentencing, and the district court didn't give relief, and this court reversed. And I think in this situation, especially given Lavelle, it may certainly do the same thing on direct appeal. I reserve the rest of my time. If the court has questions for my colleagues, they stand prepared. If not, I'd ask you to hear from the government on the Prop 47 before we proceed to any comments. Thank you. May it please the Court, Ilana Artson on behalf of the United States. First of all, with respect to the Lavelle case, that's essentially a procedural case that says where a collateral challenge is not permitted under custis, that defendant, if they subsequently obtain state relief, can come back, and there's a procedural vehicle to do that. It says nothing about the merits of whether that claim is viable. It's simply a procedural tool. Here, there are at least four reasons why the court should deny this claim on the merits. First of all is timing, and as Your Honor referred to the McNeil case, that was a case under the Armed Career Criminal Act where the Supreme Court looked at at what point do we look at the felony status. In that case, the court said, if you look at the plain language of the statute, and the plain language of Title 21 is very similar. It says if any person commits a violation of this subparagraph after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment. That is a backward-looking inquiry, and as the Supreme Court said in McNeil, the only way to look at that backward-looking inquiry is to look at was it a felony at the time of the prior conviction. Now, I would admit that under the language in Section 841, it is arguable that the timing might be at the time that the federal 841 offense is committed, but that is certainly the latest date that we look at the timing of the felony status. And there's no dispute here that at the time that Mr. Vasquez committed his federal offenses, this was a felony. It was a felony at the time that he was convicted. It was a felony at the time that he committed his federal offenses. It was a felony at the time that he was sentenced on his federal offenses. So under the plain language of Section 841, this is a felony. It's also consistent with the interpretation of other recidivist provisions in sentencing guidelines cases that this Court has looked at. You did hear counsel say that McNeil and Norby are really distinguishable from this particular case. Well, I don't see how McNeil is distinguishable. It's looking at the question of the timing. As of what time do we determine the felony status, McNeil said that's a question of the plain language, and so did this Court in Yepes and in Salazar-Mojica, which were guidelines cases. The plain language of Title 21, Section 841, looks at the very latest at the time when the federal offense is committed, and at that time this was a felony. So the first reason is timing. I just want to make sure that I understand the California procedure. So if you've been previously convicted in California under the law that's amended by Prop 47, you can have your sentence recalled, is that correct? You can have the sentence. Essentially the felony is re-designated, and yes, you are resentenced. And if you're resentenced and if you've served all the time that you would have gotten originally if it had been a misdemeanor, they're going to let you out. Is that right? I suppose that's true. But the question for federal law, and this is a question of federal law, under Norbery, Norbery looked at Title 21, again Section 841, and said, what do we do with subsequent state action? What do we do if we have a prior felony conviction that has subsequently been vacated by the state? And the answer was, under Section 841, state procedures do not control. Under federal law, what controls is whether the felony was vacated based on an error of law or innocence. So in this case, even if this conviction, instead of being reduced to a misdemeanor, had been entirely vacated, under Norbery, for purposes of the enhancement under Section 841 and 851, it is still a felony because this was a policy determination. There was never any determination here that there has been any legal error or that there has been innocence. Mr. Vasquez's sentence was reduced based solely on a policy determination, and under Norbery, that is still counted as a prior felony conviction under Section 841. The third reason is that Prop 47 is not retroactive. California courts, in looking at similar language in the Wobbler statute, have held that when a felony is reduced to a misdemeanor under the Wobbler statute, it is only a misdemeanor going forward. That's with Cal Penal Code 1170.18, right? Yes. So, well, the Wobbler statute is in California Penal Code Section 17, but this statute, 1170.18, has the same language, and there's no reason it would not be interpreted in the same way. And in fact, in our 20HA letter, we did cite this recent case in which essentially what the California Supreme Court, what the California Appellate Court did is apply that to say essentially we're not looking at the ancillary crimes. If a misdemeanor is reduced, it may be a misdemeanor going forward, but it doesn't have any effect on any ancillary crime that may have been enhanced based on that prior felony because this is only a misdemeanor going forward. So, for example, if you have a failure to appear on a misdemeanor, that's a misdemeanor. If you fail to appear on a pending felony, that's a felony. Well, the California Appellate Court said in a case where a defendant may have that underlying predicate reduced to a misdemeanor, the failure to appear is still a felony because at the time you failed to appear, it was a felony. That's exactly what we have here. So even under California law and under Proposition 47, it's a misdemeanor only going forward, and Your Honor pointed to the language in subsection N that says nothing in this section is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this Act. And then finally, we would argue that under section 851, there are very specific procedures that are set out for challenging prior convictions in these Title 21 cases. And one of those specific provisions, 851 subsection C, says that any challenge that is not raised in response to the section 851 information is waived absent good cause. Now, in this case, the defendant argues that he has good cause because the claim wasn't available, but the government submits that that shouldn't be the standard. The standard of good cause should be, is this a claim that would satisfy the Norbury standard? In other words, by placing these opportunities to challenge convictions at the time of sentencing, Congress meant to put a limit on the time period when these convictions could be challenged. It did that both by saying that any claim that's not raised at sentencing is waived, and in subsection E, by saying that a defendant can't challenge the validity of a prior conviction that is more than five years before the date of the information. What McChristian held... Oh, so what is good cause? Well, we would argue that good cause... To me, the challenge as to whether Norbury controls or not, and or McNeil, seems to be a good argument, seems to be that just the absolute reason why good cause would be appropriate. Your Honor, we would argue that if the Norbury standard is met, that would be good cause, but that section 851 doesn't allow indefinite challenges based on indefinite changes in state law, and that's not what McChristian intended to permit. It did not intend to permit years later a defendant to come back, alter the historical facts, and then come back and change his federal sentence. And we would submit that that's essentially what the Supreme Court was looking at in McNeil when it said we are not going to look at what the penalty would be at the time of sentencing, we're going to look at the time that the prior conviction was sustained. If the court has any questions about any other issue to be addressed in the public argument, my able colleague Allison Westfall-Kong is prepared to address those. Mr. Powell, go ahead with your rebuttal on this one, and then I'll confer with my colleagues as to whether they wish to hear anything on any other issues. Thank you, Your Honor. I'll be brief. The government makes four points. I'll respond to them quickly. Regarding the timing, I think the government misreads McNeil. In their opposition brief, they recognize, quote, the Supreme Court declined to address the question of, quote, what happens when, quote, a state subsequently lowers the maximum penalty applicable to an offense and makes that reduction available to defendants previously convicted and sentenced for that offense. In other words, McNeil reserved the issue we present here, so it doesn't answer it against us. It reserved it. I also, the government says it makes... I'm sorry, which page of McNeil are you referring to? That's the government's answer in brief. It's page 26, note 5, citing McNeil at page 2224, note 1. Second, the government, I think they say, well, if his conviction had been vacated, it would have been different, and he would lose under the case law if he had been vacated because his conviction was valid at the time. But that's a big distinction here, and that's why Norby doesn't apply. We agree he remains convicted. This is the question reserved by McNeil. He remains convicted of possession, simple possession of cocaine, in 1996. He was convicted then, I think he was convicted in 1996, and he's remained convicted through this day. The question is what happens when the state lowers what that means, what they think it is. Is it a felony or not? And that's typically a state court decision. One of the things they say about Perez, they say, I think they get that wrong too, when they talk about an ancillary crime, and Perez is a good example. So Perez, he's charged with felony possession and failure to appear on felony possession. And the court reduces the felony possession, he was convicted of that, and they refuse to vacate the FTA, and their logic makes a lot of sense. He could have gone to trial on the possession and won the trial, but acquitted. He didn't possess the cocaine. It wasn't there. It wasn't him, it was somebody else, alibi, whatever it was. But because at the time of he missed his appearance, he knew he was facing a felony charge, that charge remains unaffected by Prop. 47, which makes a lot of sense. And that's a distinction here that's important for the court. We're not asking the court to vacate Mr. Vasquez's convictions in this case because he had a prior misdemeanor. There's nothing invalid about them because he had a prior misdemeanor, whether it was a felony. When the prior goes to an enhancement, what Lavelle teaches and what McChristian teaches is the individual can report a successful challenge, and upon reporting that successful challenge to the court in a timely fashion, they can get relief, which brings me to the last point, good cause. It has to be good cause to get around the time frame because that's what Congress said. He couldn't have made this challenge at the time Judge Carter sentenced him because Prop. 47 wasn't enacted. And as opposed to the government's presentation, this is years later and we're digging things up, we're on direct appeal of this case. That's about as diligent as you can get. If he hasn't gone final, we'd ask for the relief. Thank you, Your Honor. Thank you. The panel is satisfied with the matters that have been submitted. The court will take a brief recess and the courtroom will be cleared so that we can proceed with the sealed portion of the argument.
judges: Farris, Bybee, Smith